Abbey House Media v. Apple, Inc. v. Simon & Schuster We're going to test the mic first to make sure it works. Is it blecker? Bleacher. Okay. Victor it's good? Okay. Mr. Bleacher, good morning. Good morning. Good morning, your honors. May it please the court, my name is Maxwell Bleacher. I allegedly am an antitrust lawyer in Los Angeles. And first of all let me thank you for accommodating my present physical condition. I very much appreciate the ability to talk to you while seated. Thank you for being here. Thank you. I find it altogether fitting and appropriate that the argument in this case and the next case, Diesel, which bear similar issues. But I speak only for Abbey House and books I'm born. Is being heard in a courthouse named after Justice Thurgood Marshall. In his eloquent and passionate opinion in 1972 in a case called United States versus Topco. He wrote what I frequently call an ode to the antitrust laws and their importance. And particularly he emphasized how small businessmen, like the two plaintiffs in these cases that you're hearing back to back. How small businessmen have been accorded under this Magna Carta as he put it. The freedom to compete and assert with vigor, imagination, devotion and ingenuity. Whatever economic muscle they can muster. Now in this case the district court whose contribution, a monumental contribution to juridical wisdom in deciding the case of United States versus Apple. But in this case she wandered off the reservation and shattered the dream that Justice Marshall talked about. And she did it violating every precept and rule governing the resolution of summary judgment. First. The standard is but for causation? Yes. Did not the district court identify quite a number of causes for your client's financial issues? Well, she did two things. She identified a number of causes, which is fine. That's why we have juries to resolve our view and the other person's view. But she made fact findings. She made fact findings. I think she identified a number of indisputable facts. For example, the lack of an e-book reader. Some other issues, which I don't believe are in dispute. And so my question is, in light of some of those things that the district court identified, could a reasonable jury have found but for causation in terms of an antitrust injury here? Let's take the e-book reader. She identified that as a cause of Books on Board's business problems and failure. But in every month that it operated, from 2008 through the month before agency, it sold more books than it did the month before. It has a straight uphill line. It was on a downward trend. In other words, the year-end growth shrank from 150% in April of 2009 to 21% in March of 2010. Is that a disputed fact? That's a good fact for them to bring out to the jury. Just as I'm bringing out to you the idea that we continue to grow. That at the end of 2009, just before the imposition of agency, we had more cash on hand than we ever had. That only in December of 2009, before the imposition of agency, a consortium invested $600,000 in Books on Board to buy 10% of the business, giving it a valuation of $6 million. That is not a business that you can say, as a matter of law, indisputably is failing. And that's what she did. And it's wrong. She doesn't have the right to make that finding. That's a jury issue. Well, I think it probably is a jury issue whether the business was indisputably failing. The question that I'm trying to focus on is whether the antitrust violations were a but-for cause of your client's demise. Or were there other factors? Yeah. Well, the answer to that is twofold. In this circuit, and only as recently as the first week of February of this year, this court decided a case called Actos, in which it said, drawing on an earlier decision in, what was that case? I know the cases you're talking about. I actually find these are our cases. I find the language a little bit puzzling. Because on the one hand, it says but-for. And then, on the other hand, it says immaterial. And I'm not, you know, how do you reconcile that language within our opinions? For purposes of today and deciding the propriety of this summary judgment, we can live with the most stringent standard. Because there is simply a substantial body of evidentiary facts from which a jury could reasonably find that in the absence of this horrendous and greedy conspiracy among the publishers and Apple to dispose of Amazon's low pricing, in the absence of that, these people would have continued to operate and continued to have flourished and ultimately. But given the trends, why is that not speculative? Because you can't, as a matter of law, say that a trend is going to continue. There's conflicting evidence. We were growing. At a certain point, growth ends or slows down. It doesn't mean the business is failing. You cannot indisputably say, as a matter of law, business is failing because the growth rate slows down. We were entitled under. . . Excuse me. This report said Bob had a negative net income every year was in existence and never had a profitable quarter. Is that correct? Yes. We had grown every month and every quarter from the time we opened the door until the month before agency. The district court said that Bob had a negative net income every year it was in existence and never had a profitable quarter. Is that correct? That is correct. That is correct. But in an evidentiary fact, you can present to the jury, but certainly doesn't mean that, as a matter of law, we lose. Amazon operated for years and years and years losing money. But look at it today. And the fact is you don't have to make money because if you build up enough volume, these people could have sold the business out to Amazon, Overdrive, or somebody and made a very substantial profit, capital gain type profit. That sounds speculative to me. Not really, but it's the kind of evidence we can put on through an expert that a jury is entitled to consider in measuring or quantifying the damage. I mean, there certainly isn't here a body of evidence that says this company was dead as a doornail. This is not an Argus case. Argus was the outlier case in which every indicia over a period of time showed that the company was going to close down. This company was still growing. Slower than it started out, but that's not abnormal. That's normal. Thank you, Mr. Blanchard. You've reserved two minutes for rebuttal. We'll hear from Mr. Silber. Thank you, and good morning. I'm Greg Silbert for the publishers. This is a case like the Argus case that this court previously decided in which the plaintiff's current position with respect to injury is flatly contradicted by the contemporaneous view of the plaintiff before bringing this lawsuit as to what was happening with its business. What this court held in Argus is that when you have that contradiction, as you do here, there is no triable question of fact and the plaintiff does not get past summary judgment. In this case, what the undisputed and contemporaneous evidence shows, as Judge Cote correctly found, is that Books on Board was at an enormous competitive disadvantage when it came to price competition because Books on Board charged extremely high prices and it was in a market dominated by companies that charged extremely low prices like Amazon and Barnes & Noble. Books on Board itself repeatedly complained about the competitive disadvantage that it faced. Before the agency pricing system started, Books on Board talked about how Amazon's prices had significantly damaged its business. It said, Amazon is taking money right out of our pocket. It said, Amazon's pricing has been very costly to us. In 2009, still well before agency, Books on Board lays off four employees. It cuts the salaries of every remaining employee by 25% to 50% and it attributes this change to sub-cost pricing by Amazon and Barnes & Noble. Then in December of 2009, again still months before agency, Books on Board's founder and CEO, Mr. Livolsi, starts publicly calling Amazon's prices predatory, saying they're an attack on literature and publicly urging the publishers to do something about it. So then in April of 2010, the agency system starts. As we know, Judge Coates . . . There is some evidence in the record to support the claims, I suppose, of injury. I mean, the question is whether there's enough. I mean, there is a substantial drop in revenue right after the agency plan was adopted, apparently. There was growth. Even though there wasn't profit, there was growth. I mean, why isn't that enough, along with some of the testimony, to get this to trial? It's not enough, Your Honor. The growth was steadily declining, as you pointed out. With respect to the drop in revenues, Mr. Livolsi himself explained why that happened. And the reason had nothing to do with agency pricing. It was because of the temporary product outage that occurred during the transition to agency. And Livolsi says over and over again, the outage has caused us to lose revenues, but agency pricing is a good thing and has not done us any harm. So, again, it is very much the Argus situation. You have many, many facts in the record that the plaintiff itself is repeatedly discussing contemporaneously, saying, this is the problem. This is why our business is in trouble. At the same time, and in this case, it's in fact even stronger than Argus. Because, remember, Argus, the plaintiff simply ignored and never mentioned what it later claimed caused it a mortal wound. Here, the plaintiff is saying, well, our business failed three years after agency started because of agency pricing. But during that actual period, the plaintiff was not ignoring agency pricing. It was talking about it all the time and saying it's a good thing. In fact, even in 2012, when the plaintiff was threatening to bring this lawsuit and drafted a letter to one of the publisher defendants, it went out of its way to say the losses that we experienced were not because of fixed pricing. And the examples go on and on. During the agency system in 2011, the plaintiff urged another publisher, an independent publisher, to adopt agency because it would level the playing field amongst publishers. The plaintiff repeatedly made lists of issues that had troubled the business. Never, ever did it say that agency pricing had ever caused it a problem. It always said the opposite. And the reason is crystal clear. As the plaintiff itself said, in fact, during the agency system, it said our biggest margin impact was from sub-cost pricing by Barnes & Noble. And now, under this system, pricing is fixed. Therefore, agency pricing is a good thing for us. Agency pricing removed a competitive disadvantage that books on board had previously faced. Now, Judge Chin, you asked about the standard for causation. Remember, we've got two issues here, two hurdles that the plaintiff has to meet. It's got to get by antitrust injury, and it's got to get by causation. With respect to causation, what this Court said in Argus is it's not an either-or, it's a both-and. It is but-for causation and material and substantial, material or substantial causation. Okay? The plaintiff here cannot get by either one of those standards because, as you said- What is the difference between the two? Why doesn't but-for imply material? I think but-for is a without-which-not. But it may be, then, you can almost think about it as an analogy to tort of a proximate causation requirement. So in tort law, you distinguish between but-for causation and proximate causation, right? The but-for cause has to happen or else the injury wouldn't happen. But sometimes in order to recover, you have to show that the injury proximately resulted from that wrong. And in this case, what you have is literally over a dozen issues that the company is facing, 16 of them, that the company itself identifies contemporaneously in real time as the problems with its business. And we lay these out for you in our brief. And again, never, ever, ever until bringing this lawsuit do they ever say that agency pricing is one of the problems. In fact, they say the opposite. And so now the plaintiff wants to come here to you and say, you know what? What we said were the problems that we faced as a business. Never mind all that. And the thing that we didn't say, the thing that we said was not a problem, that actually was both the but-for and material cause of the failure of the business years after agency started. And Judge Coate, who knew the circumstances of this alleged conspiracy better than anyone, having found a price-fixing conspiracy in Apple, looked very closely at that record and correctly determined that there is simply not enough evidence in this record that could remotely raise a genuine tribal issue of material fact that would get this case to a jury. The Court has no questions. We will rest. Thank you. Thank you, Mr. Silbert. Mr. Bleeker, you've reserved two minutes for rebuttal. Thank you very much, Your Honor. In addition to denying us a presumption, which the Actos case of February decided February, first week in February of this year, says that there's an antitrust violation, and even at the summary judgment stage, we're entitled to a presumption where the injury is the kind that the violation would likely produce. That's exactly what Judge Coate said in the Apple case. She said there's going to be an elimination of price competition, and that's what our complaint was. And we were entitled to a presumption, and she never even discussed it. Secondly, she just didn't write anything formal, but she rejected Mr. Lavolzi's testimony. Mr. Lavolzi went to the Department of Justice and to the Texas Attorney General seeking a cease and desist order before agency was implemented. He wrote a memo that says agency's scaring the heck out of me, and he wrote a memo or testified that agency was horrifying. Now, yes, counsel's right. There's other and contradictory statements, but he didn't have a crystal ball, and this was a revolutionary sea change in the way business was conducted. And if he was confused and if he went back and forth with different views, that's for a jury to sort out. It's not her job on summary judgment to say I'm going to reject his testimony. And she did it on the basis of your decision in the Bank of America case at page 34 of her opinion, and that case says you can reject a testimony in a plaintiff because of inconsistency only when it's sworn testimony. There is no sworn testimony here, not at all. So that case is inapplicable and inappropriate. And then she ignored our expert. Our expert did an opinion in which he took on their expert, the esteemed Dr. Carlton, and he said Dr. Carlton looked at the wrong data and compared the wrong books. Now, I don't know which one is right, but that's why God invented juries, to figure that out. And then the outage. Yes, he didn't get hurt at the beginning by the inability to price because he didn't have anything to sell. When they went to agency, he didn't have any books to sell because he didn't have a contract in place, and it was the publisher defendants that said you have to deal with wholesalers. We're overdriving Ingram. They said that. That's a nondisputed fact. They also said you're not getting any books until you sign an agency contract, and the agency contracts were not ready when his lordship, Apple, decided they had to be ready by April 1. They weren't ready. And so our guy didn't get any books to sell. So, yes, it's correct that the real impact at the beginning was not agency qua agency, but the inability to get books, a direct and inextricably intertwined result of the shift to agency over which he had no control. So. Thank you, Mr. Blanchard. And your time is up. Thank you. We'll reserve decision in this, but, of course, consider along with it the arguments to be made in the next case.